Rowena Santos (SBN 210185)
rsantos@slpattorney.com
Eleazar D. Kim (SBN 297876)
ekim@slpattorney.com
**STRATEGIC LEGAL PRACTICES**
**A PROFESSIONAL CORPORATION**
1840 Century Park East, Suite 430
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile: (310) 943-3838

Attorneys for Plaintiffs
RICH SCHICK and CHERYL HUBER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICH SCHICK and CHERYL HUBER, <br><br> Plaintiffs, <br><br> v. <br><br> BMW OF NORTH AMERICA, LLC; and DOES 1 through 10, inclusive; <br><br> Defendants. | Case No.: 5:17-cv-2512-VAP-KKx <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Date:  January 22, 2018 <br> Judge:  Hon. Virginia A. Phillips <br> Time:  2:00 p.m. <br> Dept.:  8A |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   STATEMENT OF UNDISPUTED AND DISPUTED FACTS....................3

III.  DEFENDANT PREJUDICED PLAINTIFFS BY FAILING TO PROPERLY MEET AND CONFER UNDER LOCAL RULE 7-3 .............8

IV.  DEFENDANT BEARS A HEAVY BURDEN ON A MOTION FOR SUMMARY JUDGMENT ..........................................................................10

V.   DEFENDANT HAS FAILED TO CARRY ITS HEAVY BURDEN..........10

    A.   Plaintiffs' First Cause of Action for Violation of the Repurchase Obligation Was Tolled by the Delayed Discovery Doctrine...............11

    B.   Plaintiffs' Second Cause of Action for Failure to Conform the Vehicle to Its Express Warranty Within 30 Days Is Timely .............................19

    C.   Plaintiffs' Third Cause of Action For Defendant's Failure To Make Available to Its Authorized Dealers Sufficient Service Literature ......20

    D.   Plaintiffs' Fifth Cause of Action for Breach of the Implied Warranty Is Timely ........................................................................................21

    E.   Defendant is Equitably Estopped From Asserting a Limitations Defense ....................................................................................................22

    F.   Plaintiff's Claims are Tolled Pursuant to Section 1793.1(a)(2) ...........23

    G.   The Repair Doctrine Has Tolled Plaintiff's Claims .............................23

    H.   Plaintiffs' Claims Have Continuously Accrued ...................................24

    I.    The Statute of Limitations Defense is a Question of Fact for the Trier of Fact to Decide, and is Not Suitable for Disposition on a Motion for Summary Judgment ..........................................................................24

VI.  CONCLUSION ........................................................................................25

1

## TABLE OF AUTHORITIES

2

3   CASES

4   *Aced v. Hobbs–Sesack Plumbing Co.*, 55 Cal.2d 573 (1961)........................14, 25

5   *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176 (9th Cir. 1989)....11

6   *Alcatel-Lucent USA, Inc. v. Dugdale Communications, Inc.*, No. CV 09-2140

7       PSG (JCx), 2009 WL 3346784 (C.D. Cal. Oct. 13, 2009)................................9

8   *Ambat v. City & County of San Francisco*, 757 F. 3d 1017 (9th Cir. 2014) .......10

9   *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185 (2013)....................26

10  *Atkinson v. Elk Cor. of Texas*, 142 Cal. App. 4th 212 (2006) ...........................22

11  *Calderone v. United States*, 799 F. 2d 254 (6th Cir. 1986)................................10

12  *Cardenas v. Ford Motor Co.*, No. CV181090DSFPLAX, 2018 WL 2041616

13      (C.D. Cal. Apr. 23, 2018) .............................................................................25

14  *Cedano-Viera v. Ashcroft,* 324 F.3d 1062 (9th Cir. (2003)...................................3

15  *Cleveland v. Internet Specialties West, Inc.*, 171 Cal. App. 4th 24 (2009) .........27

16  *Donlen v. Ford Motor Company*, 217 Cal. App .4th 138 (2013) ..................14, 16

17  *Ehrlich v. BMW of N. America*, 801 F. Supp. 2d 908 (C.D. Cal. 2010)........16, 22

18  *Falco v. Nissan*, No. 13- CV-00626, 2013 WL 5575065, at *10 (C.D. Cal. Oct.

19      10, 2013) .....................................................................................................23

20  *Gilkyson v. Disney Enterprises, Inc.*, 244 Cal. App. 4th 1336 (2016) ................26

21  *Harvey's Wagon Wheel, Inc. v. Van Blitter*, 959 F.2d 153 (9th Cir. 1992) .........11

22  *Hatami v. Kia Motors Am., Inc.*, 2009 WL 1396358 (C.D. Cal. 2009)...............12

23  *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809 (2001) ...26

24  *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878 (1989)......................12, 16, 24

25  *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324 (2009) .......26

26  *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991). 13, 15, 16,

27      22

28  *Krotin v. Porsche Cars North America, Inc.*, 38 Cal. App. 4th 294 (1995)........12

*Kwan v. Mercedes-Benz of North America*, 23 Cal. App. 4th 174 (1994) .......... 12

*Lundy v. Ford Motor Co.*, 87 Cal. App. 4th 472 (2001) ..................................... 12

*Malaivanh v. Humphreys Coll.*, 2017 WL 3503386 (E.D. Cal. Aug. 16, 2017) . 11

*Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (9th Cir. 2005) ............ 20

*Mills v. Forestex*, 108 Cal. App. 4th 625 (2003) .................................................. 14

*Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099 (9th Cir. 2000) ....... 21

*Orange County Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343 (2017) ................................................................................................ 26

*Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094 (2001) ........................ 12

*Reiter v. Prudential Ins. Co. of Am.*, 2015 WL 12697621 (C.D. Cal. Sept. 17, 2015) ................................................................................................................ 9

*Sagehorn v. Engle*, 141 Cal. App. 4th 452 (2006) .............................................. 23

*See Silvio v. Ford Motor Co.*, 109 Cal. App. 4th 1205 (2003), *as modified* (June 19, 2003) ........................................................................................................ 16

*Superbalife, Int'l v. Powerpay*, No. CV 08-5099, 2008 WL 4559752 (C.D. Cal. Oct. 7, 2008) .................................................................................................... 9

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal. 3d 586 (1970) ..... 27

*United States v. Rearden,* 349 F.3d 608 (9th Cir. 2003) ....................................... 2

*Vape Soc'y Supply Corp. v. Zeiadeh*, No. SACV-16-01971-AGD-FMX, 2017 WL 2919080 (C.D. Cal. Feb. 6, 2017) .............................................................. 9


**STATUTES**

Cal. Civ. Code § 1791.2(a) ................................................................... 11

Cal. Civ. Code § 1793.2 ........................................................................ 15

Cal. Civ. Code § 1793.2(a)(3) .............................................................. 11

Cal. Civ. Code § 1794 ............................................................................ 11

Cal. Civ. Code § 1794(a) ....................................................................... 20

Cal. Civ. Code § 1791.1 ......................................................................... 11

Cal. Civ. Code § 1793.1(a)(2)..............................................................24

Cal. Civ. Proc. Code § 1793.2(d)........................................................11

Cal. Comm. Code § 2725(2) ...............................................................13

4

# I.    INTRODUCTION

Defendant BMW of North America, LLC's ("BMW") Motion for Summary Judgment ("MSJ") contends that Plaintiff's First through Fifth Causes of Action under the Song-Beverly Consumer Warranty Act ("Song-Beverly") are time-barred.[1] BMW's MSJ, however, is procedurally and substantively defective.

As explained in Plaintiffs' *ex parte* application to strike BMW's MSJ (Dkt. No. 49), and below, BMW violated Local Rule 7-3 by failing to meet and confer with Plaintiffs seven days before filing its MSJ. During the August 7, 2015 meet-and-confer conference, Plaintiffs advised BMW that they would consider dismissing their fraud claim, and BMW agreed that it would get back to Plaintiffs if that would resolve the other remaining issues. BMW also represented to Plaintiffs that the dismissal of the fraud claim might obviate the need for an MSJ as to the remaining issues, and agreed to continue the meet-and-confer process so that the parties could discuss with their clients the possibility of dismissing the fraud claim. While Plaintiffs' counsel were in the process of obtaining their clients' permission to dismiss the fraud claim, BMW filed its MSJ—four days short of the seven days required under Local Rule 7-3. Making matters worse, the Tallent Declaration submitted in support of the MSJ is artfully drafted to give the impression that BMW properly met and conferred with Plaintiffs. The declaration, however, omits the date on which the meeting occurred. Worse still, BMW's notice of motion also omits the date of the conference. Local Rule 7-3 is more than a mere formality, and BMW's failure to comply with Local Rule 7-3 is reason alone to warrant denial of its MSJ.

BMW's MSJ is substantively defective as well. Specifically, the MSJ is predicated on a profound misunderstanding of when a claim for violation of the

---

[1] Plaintiff advised BMW in the meet and confer process that they would dismiss their Sixth Cause of Action for fraudulent omission. Accordingly, the portions of BMW's MSJ relating to this claim are moot.

repurchase obligation (First Cause of Action) accrues. According to BMW, such a claim accrues when a plaintiff who is not an automotive expert feels his or her vehicle cannot be fixed. This is not the standard. To the contrary, a plaintiff's claim accrues only after a reasonable number of repair attempts have occurred. Under this "reasonable number of attempts" standard, a plaintiff cannot "know" of the breach of the warranty until the first repair visit outside of the warranty period, which puts Plaintiff on notice that BMW failed to repair the vehicle within a reasonable number of attempts during the warranty. Only after the defects manifest during an out-of-warranty repair visit can a plaintiff "suspect" that the vehicle has not been repaired consistent with the terms of the express warranty and within a reasonable number of repair attempts.[2] **Indeed, BMW's warranty manual concedes that a reasonable number of repair attempts consists of "four or more" repair visits**.[3] Here, Plaintiffs suspected they possessed a Song-Beverly claim on January 7, 2015—the date of the fifth documented repair visit for the windows. Accordingly, the four-year statute of limitations will not expire until January 7, 2019 at the earliest. Plaintiffs' claim is thus timely.

Additionally, Plaintiffs' Second (failure to conform to warranty within 30 days), Third (failure to provide proper literature and parts to the servicing dealership), Fourth (breach of written warranty) and Fifth (breach of implied warranty) Causes of Action were either timely or tolled under multiple,

---

[2] Nothing stops a plaintiff from suing earlier, but as discussed below in § V.A with reference, in part, to *Krieger v. Nick Alexander Imports, Inc.*, the limitations period extend until the plaintiff knows or should have known that a manufacturer has not complied with a warranty's terms, which can not happen until the warranty expires.

[3] Accordingly, BMW is equitably estopped from asserting the statute of limitations defense in this case. *See also Lantzy v. Centex Homes* (2003) 31 C4th 363, 383 ("[O]ne cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought")

independent tolling doctrines, including but not limited to the discovery rule, equitable estoppel, the repair tolling doctrine, and the continuous accrual doctrine. These causes of action are therefore timely.[4]

## II.   STATEMENT OF UNDISPUTED AND DISPUTED FACTS

On February 28, 2012, Plaintiffs leased the subject vehicle, a 2012 BMW 650iCV (hereinafter, "Subject BMW"). (Pls.' Sep. Stmt. at 1; Huber Decl. ¶ 3; Schick Decl. ¶ 3.) The terms of the lease were three years and 45,000 miles (*i.e.*, 15,000 miles per year). (Pls.' Sep. Stmt. at 2; Huber Decl. ¶ 3.) The vehicle was returned at lease end in or about February 2015 with approximately 17,000 miles on its odometer. (Pls.' Sep. Stmt. at 3; Huber Decl. ¶ 3.)

The Subject BMW came with a 4-year/50,000-mile, bumper-to-bumper express warranty, whichever comes first. (Pls.' Sep. Stmt. at 4; Huber Decl. ¶ 4; Schick Decl. ¶ 4.)

During the Subject BMW's lease, Plaintiffs experienced various issues, including the rear windows not closing ("Window Defect"), amongst other problems. (Pls.' Sep. Stmt. at 5; Huber Decl. ¶ 3; Schick Decl. ¶ 5.)

Indeed, Plaintiffs continued to experience the Window Defect up until the time the vehicle was returned at lease end. (Pls.' Sep. Stmt. at 6; Huber Decl. ¶ 6; Schick Decl. ¶ 6.) During this period, BMW and its authorized repair facility failed to repair the vehicle within a reasonable number of repair attempts (*i.e.*, five documented repair attempts for the windows). (Pls.' Sep. Stmt. at 7; Huber Decl. ¶ 6; Schick Decl. ¶¶ 6, 7.)

The following is a brief summary of the relevant parts of the repair history with respect to the Subject BMW's windows, as documented by BMW's authorized dealer. (Pls.' Sep. Stmt. at 8-31; Huber Decl. ¶ 7.) Despite many visits,

---

[4] Notably, in its moving papers, BMW neglects discussing any of the laws regarding these matters and therefore should not be allowed to make additional arguments on reply, as Plaintiffs will not have the opportunity to respond. *See United States v. Rearden,* 349 F.3d 608, 614 n. 2 (9th Cir. 2003) ("We decline to consider Rearden's argument ... because it is raised for the first time in reply."); *Cedano-Viera v. Ashcroft,* 324 F.3d 1062, 1066 n.5 (9th Cir. (2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.").

BMW was unable to repair the Subject BMW and its Window Defect within a reasonable number of repair attempts. (Pls.' Sep. Stmt. at 7; Huber Decl. ¶ 6; Schick Decl. ¶¶ 6, 7.)

- On May 8, 2012, with 2,203 miles on the odometer, Ms. Huber presented the Subject BMW to BMW's dealership complaining that the windows would not remain closed. (Pls.' Sep. Stmt. at 8; Huber Decl. ¶ 6.) The techincian verified the concerns and performed repairs. Although Ms. Huber previously complained to the dealer about the window problems, this was the first repair visit duirng which the dealer documented the window complaint and attempted to repair it. (Pls.' Sep. Stmt. at 10-11; Huber Decl. ¶ 8.) The vehicle was out of service for two days for this visit. (Pls.' Sep. Stmt. at 12; Huber Decl. ¶ 8.)

- On March 5, 2013, with 7,158 miles on the odometer, Ms. Huber presented the Subject BMW to BMW's dealership, because the windows would not remain closed when closing the convertible top. (Pls.' Sep. Stmt. at 13; Huber Decl. ¶ 9.) The technician verified the concern and, according to the repair order, performed Service Information Bulletin 51 23 12, "Window Reverses When Closing." (Pls.' Sep. Stmt. at 14; Huber Decl. ¶ 9.) Furthermore, BMW changed the oil in the Subject BMW. (Pls.' Sep. Stmt. at 15; Hubler Decl. ¶ 9.) This was the second repair attempt by the dealer for the windows, and the Subject BMW was out of service for two days. (Pls.' Sep. Stmt. at 16; Huber Decl. ¶ 9.)

- On May 17, 2013, with 9,088 miles on the odometer, Ms. Huber presented the Subject BMW to BMW's dealership complaining that the windows would not remain closed, because they were going up and coming back down. (Pls.' Sep. Stmt. at 18; Huber Decl. ¶ 10.) The techincian verified the concerns and performed repairs. Also during this visit, BMW again changed the oil. (Pls.' Sep. Stmt. at 19-20; Huber Decl. ¶ 10.) This was the third repair attempt by the dealer for the windows, and the Subject BMW was out of service for seven days. (Pls.' Sep. Stmt. at 21; Huber Decl. ¶ 10.)

- On November 24, 2014, with 16,670 miles on the odometer, Ms. Huber again returned to BMW's authorized repair facility complaining that the windows would not remain closed. (Pls.' Sep. Stmt. at 23; Huber Decl. ¶ 11.)  The technician verified the concern and performed repairs. This was the fourth repair attempt by the dealer for the window, and the Subject Vehicle was out of service for five days. (Pls.' Sep. Stmt. at 24-26; Huber Decl. ¶ 11.)

- On January 7, 2015, with 16,769 miles on the odometer, Mr. Schick presented the Subject BMW to BMW's dealership, because the rear windows would not stay closed when operating the convertible top and took several attempts to close the windows. (Pls.' Sep. Stmt. at 27; Huber Decl. ¶ 12; Schick Decl. ¶ 8.) According to the repair orders, the technician verified the concerns and performed repairs. (Pls.' Sep. Stmt. at 28; Huber Decl. ¶ 12; Schick Decl. ¶ 8.)  During this visit, BMW also performed a campaign that replaced many engine parts. (Pls.' Sep. Stmt. at 29; Huber Decl. ¶ 12; Schick Decl. ¶ 8.) This was the fifth repair attempt by the dealer for the windows, and the vehicle was out of service for thirteen days. (Pls.' Sep. Stmt. at 30; Huber Decl. ¶ 12; Schick Decl. ¶ 8.)

In or around January 2015, and after Ms. Huber talked to Mr. Schick about the Subject BMW's repair history on or about the same date he took it in for its final repair visit, Plaintiffs concluded that BMW had failed to repair the Subject BMW within a reasonable number of repair attempts under the 4-year/50,000-mile warranty. (Pls.' Sep. Stmt. at 32-33; Huber Decl. ¶ 13; Schick Decl. ¶ 9.) As a result, on or about January 7, 2015, due to the repeated problems affecting the vehicle, Mr. Schick called BMW to express his dissatisfaction with the vehicle and to request that BMW buy it back under the California's Lemon Law. (Pls.' Sep. Stmt. at 34-35; Huber Decl. ¶ 13; Schick Decl. ¶ 10.) However, BMW refused the buyback request, claiming that the window problems were self-induced, as Mr. Schick had window tints added to the windows. (Pls.' Sep. Stmt. at 36-37; Huber Decl. ¶ 13; Schick Decl. ¶ 10.) This was shocking because BMW had never mentioned in any repair order that any of the window problems

1 Plaintiffs were experiencing were due to window tints. (Pls.' Sep. Stmt. at 38;

2 Schick Decl. ¶ 10.)

3    Ms. Huber testified at deposition that it was probably not until after the

4 third repair visit (*i.e.*, second documented repair visits for the windows on March

5 5, 2013) that she felt the Subject BMW and its Window Defect could not be fixed.

6 (Pls.' Sep. Stmt. at 39; Huber Decl. ¶ 14.) Nevertheless, because Ms. Huber is not

7 an automotive expert, she continued to rely on the representations of individuals at

8 BMW's authorized dealership—who presumably are automotive experts, who

9 examined her vehicle, and who told her after each repair visit that the vehicle had

10 been fixed—when she continued to bring in the Subject BMW to the BMW

11 dealership pursuant to the terms of the 4-year/50,000-mile express warranty for

12 repairs related to the Window Defect. (Pls.' Sep. Stmt. at 40-42; Huber Decl. ¶

13 12.) Ms. Huber also testified at her deposition that it was not until calendar year

14 2014 that she felt the vehicle could be a "lemon" and, therefore, attempted to get

15 out of her lease by trading in the vehicle through the BMW dealer.[5] (Pls.' Sep.

16 Stmt. at 43; Huber Decl. ¶ 14.) This attempt was unsuccessful. (Pls.' Sep. Stmt. at

17 44; Huber Decl. ¶ 14.) Further, Ms. Huber did not suspect that she had a lemon

18 law claim against BMW for a vehicle buyback until after talking to Mr. Schick

19 about the Subject BMW's repair history, which was on or around the same date he

20 took the vehicle in for its final repair visit. (Pls.' Sep. Stmt. at 45; Huber Decl. ¶

21 14; Schick Decl. ¶ 9.) By that time, Plaintiffs had determined that BMW had

22 failed to repair the vehicle within a reasonable number of attempts under its 4-

23 year/ 50,000-mile express warranty, despite being afforded a reasonable number

24 of opportunities to do so. (Pls.' Sep. Stmt. at 46; Huber Decl. ¶ 14; Schick Decl. ¶

25 9.)  Accordingly, based on her discussion with Mr. Schick, Ms. Huber prepared a

26 summary of the vehicle's repair history for Mr. Schick before he called BMW to

26 ───────────────

[5] Notably, BMW's moving papers fail to reference Ms. Huber's testimony
27 on her belief that after the second documented repair visit, she felt the vehicle
could not be fixed, but she believed the vehicle to be a lemon in 2014 and asked
28 the dealer to replace the vehicle, which was after the third repair visit when the
dealer told her that the vehicle had been fixed.

1    request a repurchase of the Subject BMW. (Pls.' Sep. Stmt. at 47; Huber Decl. ¶
2    14; Schick Decl. ¶ 9.)

3        The problems Plaintiffs have experienced with the Subject BMW
4    substantially impair its value, use, and/or safety. (Pls.' Sep. Stmt. at 48-50; Huber
5    Decl. ¶ 15; Schick Decl. ¶ 11.) For example, Plaintiffs were supposed to use this
6    vehicle to drive to and from places, but could not, because not only would the
7    windows not close, but they were forced repeatedly to take the vehicle in for
8    repairs during the time of their lease. (Pls.' Sep. Stmt. at 51-52; Huber Decl. ¶ 16;
9    Schick Decl. ¶ 12.) Further, it was extremely burdensome for Plaintiffs to waste
10   up to 30 minutes or more to make the windows close just so they could park and
11   leave the vehicle without exposing its interior cabin to the elements or would-be
12   thieves and vandals. (Pls.' Sep. Stmt. at 53; Huber Decl. ¶ 17; Schick Decl. ¶ 12.)
13   Indeed, among the other unjustified risks, leaving the windows open during rain
14   could have caused water to enter the vehicle's interior cabin, thus causing
15   electrical problems. (Pls.' Sep. Stmt. at 54; Huber Decl. ¶ 17; Schick Decl. ¶ 13.)
16   During Plaintiffs' ownership, the Subject BMW was out of service for a total of
17   approximately 40 days, with the last visit being for 13 days. (Pls.' Sep. Stmt. at
     58; Huber Decl. ¶ 20.)

18       Eventually, Plaintiffs drove the Subject BMW significantly less than they
19   otherwise would have and planned to, as they could not rely on the vehicle to
20   function properly. (Pls.' Sep. Stmt. at 55; Huber Decl. ¶ 18; Schick Decl. ¶ 12.)
21   Accordingly, the window problems that Plaintiffs have experienced made the
22   Subject BMW worthless to them. (Pls.' Sep. Stmt. at 56; Huber Decl. ¶ 19; Schick
23   Decl. ¶ 14.)

24       In sum, it is undisputed—or, at best from BMW's perspective, there is a
25   material factual issue—that, although Plaintiffs timely presented the Subject
26   Vehicle to BMW for repairs on multiple occasions, BMW was unable to repair
27   the defects. Equally, it is undisputed (or there is a material factual dispute) that
28   Plaintiffs did not suspect they possessed claims under Song-Beverly until January

5, 2017, the date of the final repair visit, at which time they determined that they made a reasonable number of repair attempts under warranty and asked BMW to repurchase the Subject BMW under California Law. Finally, it also is undisputed (or there is a material factual dispute) that, at each of applicable repair visits, the representatives of BMW's dealership falsely advised Ms. Huber that the window problems had been successfully repaired.[6]

## III.  DEFENDANT PREJUDICED PLAINTIFFS BY FAILING TO PROPERLY MEET AND CONFER UNDER LOCAL RULE 7-3

As explained in Plaintiffs' *Ex Parte* Application to Strike Defendant's MSJ (*see* Dkt. No. 49.), BMW filed its MSJ without properly meeting and conferring with Plaintiffs (Dkt. No. 41), as required under Local Rule 7-3. Under Local Rule 7-3, the conference of counsel prior to filing of a motion must take place at least seven days prior to the filing of the motion. C.D. Cal. Civ. L.R. 7-3. BMW, however, filed its MSJ a mere three days after conferring with Plaintiffs, in violation of the Local Rules. (*See* Dkt. No. 41.)[7]

Making matters worse, the Tallent Declaration submitted in support of the MSJ is artfully drafted to give the impression that BMW properly met and conferred with Plaintiffs. (*See* Dkt. No. 42 ¶ 10.) The declaration, however, omits critical information: namely, the date on which the meeting occurred. (*See generally id.*) Had BMW not concealed that information, it would have become immediately evident that BMW had failed to comply with Local Rule 7-3 and

---

[6] While Plaintiffs maintain that the January 2015 telephone call shows when they knew the vehicle could not be repaired after a reasonable number of opportunities, a jury could reasonably conclude that in January 2014, when Ms. Huber wanted to trade in her vehicle after the third documented repair visit. In any event, it could not have been after the second documented repair visit, because the dealer advised Ms. Huber that the problem had been fixed. Had Plaintiffs filed a complaint then, BMW would have filed a summary judgment motion claiming that it was not provided a reasonable number of repair opportunities, as its warranty states that four such opportunities should be provided, or that the vehicle had been repaired after the second repair visit.

[7] As explained in greater detail below, this is not the first time BMW has attempted to circumvent the requirements of Local Rule 7-3.

1    meet and confer with Plaintiffs in good faith.

2           BMW's failure to comply with Local Rule 7-3 is reason alone to warrant

3    denial of its MSJ. *See Singer v. Live Nation Worldwide, Inc.*, No. SACV 11-0427

4    DOC, 2012 WL 123146, at *2 (C.D. Cal. Jan. 13, 2012) (denying motion for

5    summary judgment on the grounds that a letter sent three days before the motion

6    was filed did not comply with L.R. 7-3); *Reiter v. Prudential Ins. Co. of Am.*, 2015

7    WL 12697621, at *1 (C.D. Cal. Sept. 17, 2015) (denying parties motion for partial

8    summary judgment for failure to comply with Local Rule 7-3); *Alcatel-Lucent*

9    *USA, Inc. v. Dugdale Communications, Inc.*, No. CV 09-2140 PSG (JCx), 2009

10   WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009) ("The meet and confer requirements

11   of Local Rule 7-3 are in place for a reason, and counsel is warned that nothing

12   short of strict compliance with the local rules will be expected in this Court. Thus,

13   the motion is ... denied for failure to comply with Local Rule 7-3"); *Superbalife,*

14   *Int'l v. Powerpay*, No. CV 08-5099, 2008 WL 4559752, at *2 (C.D. Cal. Oct. 7,

15   2008) (denying defendant's motion to dismiss for failure to abide by L.R. 7-3 and

16   stating that, "[a]bsent any evidence that a party attempted to meet and confer in

17   good faith, this Court is unwilling to excuse noncompliance with the Local

18   Rules."); *Vape Soc'y Supply Corp. v. Zeiadeh*, No. SACV-16-01971-AGD-FMX,

19   2017 WL 2919080, at *3 (C.D. Cal. Feb. 6, 2017) (denying motions to dismiss

20   because moving party failed to comply with L.R. 7-3).

21          Given that BMW has (1) complied with neither the spirit nor letter of Local

22   Rule 7-3; (2) rejected Plaintiffs' proposal to continue the hearing on the MSJ so

23   that the parties could continue to meet and confer as to the remaining issues and so

24   that that BMW could re-file the Motion if necessary; (3) not filed an *ex parte*

25   application to seek relief with the Court for its failure to comply with Rule 7-3 or

26   the early filing deadline; (4) failed even to acknowledge its non-compliance with

27   the rules; and (5) forced Plaintiff to prepare this opposition while Plaintiff was

28

1  meeting and conferring about what claims are or are not at issues resulting in

2  prejudice to Plaintiffs, the court should strike BMW's MSJ. [8]

3  **IV.   DEFENDANT BEARS A HEAVY BURDEN ON A MOTION FOR**

4  **SUMMARY JUDGMENT**

5       As the party asserting an affirmative (limitations) defense, BMW bears the

6  initial burden of proof as to each material fact upon which it has the burden of

7  persuasion at trial. *See Calderone v. United States*, 799 F. 2d 254, 259 (6th Cir.

8  1986) (emphasis in original). Because summary judgment is a "drastic device,"

9  cutting off a party's right to present its case to a jury, the moving party bears a

10  "heavy burden" of demonstrating the absence of any triable issue of material fact.

11  *Ambat v. City & County of San Francisco*, 757 F. 3d 1017, 1031 (9th Cir. 2014).

12  **V.   DEFENDANT HAS FAILED TO CARRY ITS HEAVY BURDEN**

13       BMW has moved for summary judgment of Plaintiffs' First Cause of Action

14  for failure to repurchase the vehicle after a reasonable number of repair attempts

15  (Cal. Civ. Proc. Code § 1793.2(d)); Second Cause of Action for Defendant's

16  failure to repair the Vehicle within 30 days (Cal. Civ. Code § 1793.2(b)); Third

17  Cause of Action for Defendant's failure to make available to its authorized service

---

[8] Plaintiffs maintain they were prejudiced by BMW's failure to meet and confer to the extent required by the local rules. The lack of adequate meeting and conferring regarding the MSJ goes beyond the fraud cause of action, and that the parties have not completed a true meet-and-confer process about the MSJ in its entirety, thereby preventing the possible resolution of other aspects of the MSJ without court intervention.

BMW rejected Plaintiffs' proposal of stipulating to obtaining court leave to continue the MSJ filing deadline/hearing 30 days to allow further meet-and-confer talks and permitting the filing of an amended MSJ reflecting only the pertinent remaining causes of action and issues.

It is Plaintiffs' continued belief that allowing the MSJ to stand as-is and asking the Court to parse through the lengthy documents and determine what portions are stricken and which remain is a waste of judicial resources.

Plaintiffs were prejudiced by BMW's conduct by being forced to draft an Opposition to BMW's MSJ without a clear understanding as to which contentions and arguments raised were still at issue, as the parties were continuing to successfully meet and confer to narrow the issues presented by the MSJ. Further, BMW did not provide a list of which portions of the MSJ were resolved by virtue of Plaintiffs' withdrawal of the fraud cause of action until Friday August 17, with Plaintiffs' Opposition due Monday August 20.

10

1   and repair facilities sufficient service literature and replacement parts to effect

2   repairs during the warranty period (Cal. Civ. Code § 1793.2(a)(3)); breach of the

3   express warranty (Cal. Civ. Code §§ 1791.2(a) and 1794); and breach of the

4   implied warranty (Cal. Civ. Code §§ 1791.1 and 1794). (*See generally* Dkt. No. 1-

5   2 [Pls.' Compl.].)[9]

6        As explained in greater detail below, these claims either have not yet

7   accrued, or have been tolled under various tolling doctrines.[10]

8        **A.    Plaintiffs' First Cause of Action for Violation of the Repurchase**

9             **Obligation Was Tolled by the Delayed Discovery Doctrine**

10       Song-Beverly, Cal. Civ. Code section 1790 *et seq.*, is also known as

11  California's "Lemon Law." *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878

12  (1989). Song-Beverly is a pro-consumer statute and "[a]ny interpretation that

13  would significantly vitiate the [manufacturer's] incentive to comply [with Song-

14  Beverly] should be avoided." *Kwan v. Mercedes-Benz of North America*, 23 Cal.

15  App. 4th 174, 184 (1994). To succeed on a claim brought under the Song-Beverly,

16  the plaintiff bears the burden of proving, by a preponderance of the evidence,

17  several elements, including nonconformity of a vehicle that substantially impaired

18  its use, value or safety; presentation of vehicle to manufacturer or authorized

19  representative for repair; and <u>failure to repair the defect after a reasonable number</u>

20

21  _____

        [9] Plaintiffs intend to dismiss their Sixth Cause of Action for Fraud.

22  Accordingly, BMW's motion for summary judgment is moot as to the fraud claim.

        [10] Under the *Erie* doctrine, state law statute of limitations and tolling rules

23  apply in both federal question and diversity cases. *Malaivanh v. Humphreys Coll.*,

    2017 WL 3503386, at *2 (E.D. Cal. Aug. 16, 2017) ("The *Erie* analysis is the

24  same for state claims heard in federal court based on supplemental jurisdiction as

    it is for those based on diversity jurisdiction …. Indeed, *Erie*'s logic applies

25  equally to supplemental jurisdiction cases …. In sum, *Erie* applies here, and state

    substantive law governs the tolling question.").

26       When determining what California tolling rules require, the court is bound

    by the decisions of the highest state court. *Harvey's Wagon Wheel, Inc. v. Van*

27  *Blitter*, 959 F.2d 153, 154 (9th Cir. 1992). If that court has not decided an issue,

    the court must predict how that court would resolve it. *Air-Sea Forwarders, Inc. v.*

28  *Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (citations omitted).

of attempts. *Id.* at 886-87; *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001); *Lundy v. Ford Motor Co.*, 87 Cal. App. 4th 472, 478 (2001).[11] *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 799 (2006) ("The reasonableness of the number of repair attempts is a question of fact to be determined in light of the circumstances, but at a minimum there must be more than one opportunity to fix the nonconformity."). "[T]he critical question of whether a reasonable number of attempts were provided, thereby allowing the consumer to forego further repair attempts and pursue a 'replace-or-repurchase' remedy, depends upon the facts and circumstances of each case." *Id* at 803.[12]

BMW (correctly) concedes in its MSJ that the delayed discovery doctrine applies to claims under Song-Beverly. (*See* MSJ at 13:12-4:2.) As made clear by the plain language of California Commercial Code § 27252(2) and the holdings of *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991), and its progeny, the statute of limitations for a breach of warranty under Song-Beverly for a manufacturer's failure to repair the vehicle after a reasonable number of repair attempts does not begin to run until discovery of the breach. California Commercial Code § 2725(2) states that a cause of action accrues when tender of delivery is made, but "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Cal. Comm. Code § 2725(2).

---

[11] *See, e.g.*, *Hatami v. Kia Motors Am., Inc.*, 2009 WL 1396358, *2 (C.D. Cal. 2009) (citing and quoting *Krotin v. Porsche Cars North America, Inc.*, 38 Cal. App. 4th 294 (1995)) ("[T]he Song-Beverly Act 'creates an affirmative duty upon the manufacturer ... to provide restitution or replacement when a covered defect ... is not repaired after a reasonable number of attempts.'").

[12] The Legislature's intention in this regard is also demonstrated in section 1793.22(b)(3), which creates a presumption regarding when a "reasonable number of repair attempts" have been made. Section 1793.22(b)(3) creates a presumption that a reasonable number of repair attempts have been made when there are four repair attempts for a non-safety defect, or two repair attempts for safety defect within the first 18 months or 18,000 miles.

The import of subdivision (2) and the "future performance" exception was explained in *Krieger*, 234 Cal. App. 3d 205. In *Krieger*, in reversing the trial court's order granting summary judgement, the court found that the exception applied to plaintiff's Song-Beverly claims when a dealer promised to repair an automobile within 36 months of its purchase or during the first 36,000 miles of use. *Id.* at 216-17. The court held that the four-year limitations period of California Uniform Commercial Code section 2725 did not begin to run until the buyer reasonably knew that this promise would not be fulfilled. *Id.* at 218. In other words, when a warranty, such as BMW's 4-year/50,000-mile express warranty, explicitly extends to future performance of the goods, the warranty is tolled until the breach is discovered. *See Aced v. Hobbs–Sesack Plumbing Co.*, 55 Cal.2d 573, 585 (1961) ("The statute of limitations is tolled where one who has breached a warranty claims that the defect can be repaired and attempts to make repairs.");[13] *Donlen v. Ford Motor Company*, 217 Cal. App. 4th 138, 148-49 (2013) (evidence of "non-warranty repair" has a tendency to put the consumer on notice and "establish that the transmission was not fully repaired in conformance with the express warranty" during the warranty's existence.").

In reaching this conclusion, the *Krieger* court, reversing defendant's motion for summary judgment, considered the policies underlying Song-Beverly:

> If we adopted the position urged by respondent and held that a cause of action for breach of express warranty accrues on tender of delivery, before the seller has an opportunity to repair any defects, we would undermine the legislative purpose that the parties attempt to resolve any deficiencies in performance before resorting to the remedies provided in the Act. In light of our conclusion that actions

---

[13] BMW cites to *Mills v. Forestex*, 108 Cal. App. 4th 625, 642, 648-49 (2003), but this case is inapposite, as it applies to construction defect, not Song-Beverly, causes of action.

for breach of warranty under the Act and under the California Uniform Commercial Code are governed by the same statute of limitations, the same rule of accrual must apply to both causes of action. Application of California Uniform Commercial Code section 2725, subdivision (2) provides this consistency while meeting the policies of the Act.

*Krieger*, 234 Cal. App. 3d at 218-19. Despite conceding the applicability of the delayed discovery doctrine, however, BMW misapplies it here. Specifically, BMW erroneously contends that a Song-Beverly claim accrues when the plaintiff "believes the problem cannot be fixed." (*See, e.g.*, MSJ at 15:10.) Not so. Under the weight of authority and the plain language of Song-Beverly, a claim alleging a violation of section 1793.2 (such as Plaintiff's First Cause of Action), only arises when a reasonable number of repair attempts have occurred.

Indeed, as BMW also concedes, and as noted above, a plaintiff bringing a Song-Beverly claim must prove that (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the Vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair and (3) the manufacturer did not repair the nonconformity after ***a reasonable number of repair attempts***. Cal. Civ. Code § 1793.2.

Song-Beverly thus makes clear that a "reasonable number of repair attempts" must first occur before a plaintiff's Song-Beverly claim can accrue. Notably, this articulates an entirely different standard—and objective one—from "believing the problem cannot be fixed." Thus, a plaintiff can believe that a problem cannot be fixed without a reasonable number of attempts having occurred, and, contrapositively, a reasonable number of attempts can have occurred with the plaintiff believing the problem to be fixed. The "reasonable number of attempts" and "believing the problem cannot be fixed" standards are

conceptually and legally distinct. Both are required before a consumer can bring a lemon law claim.[14]

Under the "reasonable number of attempts" standard, a plaintiff cannot "know" of the breach of the warranty until the first repair visit made outside of the warranty where the defects manifest again. Only after the defects manifest during an out-of-warranty repair visit can a plaintiff "suspect" that the vehicle has not been repaired consistent with the express warranty. *See Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (Cal. Ct. App. 1991) (statute of limitations tolled while reasonable attempts to repair vehicle are attempted pursuant to express warranty providing for repairs during first 3 years or 36,000 miles, whichever occurred first and did not run until the plaintiff concluded vehicle could not be repaired despite a reasonable number of attempts because 'a promise to repair defects that occur during a future period is the very definition of express warranty of future performance ....'"); *Donlen v. Ford Motor Company*, 217 Cal. App .4th 138, 148-49 (Cal. Ct. App. 2013) (evidence of "non-warranty repair" has a tendency to put consumer on notice and "establish that the transmission was not fully repaired in conformance with the express warranty during the warranty's existence.").

---

[14] BMW is correct to state that a ***minimum*** of two repair attempts is sufficient to allege a claim under Song-Beverly. *See Silvio v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1209 (2003), *as modified* (June 19, 2003) (at least two repair opportunities are necessary). The theoretical floor, however, does not dispose of the issue here: when Plaintiffs suspected their claims accrued. *See Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 886 (1989) (the reasonableness of the number of attempts is a question for the trier of fact).

BMW also cites *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908, 925 (C.D. Cal. 2010) for the proposition that a plaintiff is on notice of his or her claims after two repair attempts. BMW's reliance on *Ehrlich* is misplaced. *Ehrlich* involved an implied warranty claim, not an express warranty claim, which, unlike an implied warranty claim, requires a reasonable number of repair attempts. *See id.* at 922-25. In any event, the court in *Ehrlich*, as discussed below, concluded that the express warranty tolls the statute of limitation under Song-Beverly and that the limitations period does not start running until the 4-year/50,000-mile warranty has expired and the defect manifested outside of the warranty, requiring plaintiff to pay for out-of-pocket repairs, thereby putting plaintiff on notice of a claim. *Id.* at 924-25.

1    Here, Plaintiffs' vehicle was covered by a four-year/50,000-mile express

2    warranty. (Pls.' Sep. Stmt. at 4.) Plaintiffs leased the vehicle on or about February

3    28, 2012. (*Id.* at 1.) The express warranty therefore elapsed in or around February

4    28, 2016.[15] Thus, under the delayed discovery rule, the limitations period was

5    tolled until Plaintiffs returned the vehicle under the lease term. Accordingly,

6    Plaintiffs' Song-Beverly claims against BMW are timely.[16]

7    BMW has proffered no evidence that contradicts this analysis. In fact,

8    BMW's Warranty Manual, which BMW produced during the course of discovery,

9    takes the position that the vehicle be out of service for "30-days" or that "four or

10   more" repair attempts are the minimum necessary to constitute a reasonable

11   number of attempts:

12   A reasonable number of attempts is generally defined as (i) ***four or***

13   ***more attempts*** to repair the same defect (the number of attempts vary

14   by state) or (ii) the vehicle is out of service by reason of one or more

15   repair(s) for more than a **cumulative total of 30 days** (this period

16   varies by state), except for delays created by conditions beyond our

17   control. [¶] If we are unable to correct a defect or condition covered

18   by these statutes in a reasonable number of attempts, we may be

19   obligated either to replace the vehicle or reimburse the owner/lessee in

20   an amount equal to the purchase price or lease payments paid by the

21   owner/lessee, less the amount directly attributable to use of the

22   vehicle by the owner/lessee.

23

24   [15] BMW does not cite any authority whereby the statute of limitations expires
25   while a product is still under an express warranty. It would encourage needless
     litigation to require a consumer to risk losing a viable claim by failing to file a
26   lawsuit while a product was still under an express warranty.

27   [16] As the facts demonstrate, BMW actively concealed the existence of a
     defect and, indeed, accused Plaintiffs of causing the window problems. Specifically,
28   when Plaintiffs requested that BMW repurchase the vehicle under the Lemon Law,
     BMW refused because the problems were "self-induced." (*See* Schick Decl. ¶ 17.)

1    (Pls.' Sep. Stmt. at 4, 55 (emphasis added).) Having taken this position, BMW

2    should be estopped from taking a contrary position.[17] Here, consistent with

3    BMW's Warranty Manual, Plaintiffs called BMW to request a repurchase during

4    the *fifth* repair attempt on January 7, 2015. (Pls.' Sep. Stmt. at 4; Kim Decl. ¶ 4;

5    *and see* MSJ at 15:4.) Thus, even by BMW's own evidence and logic, Plaintiffs'

6    claims did not accrue until January 7, 2015.[18]

7         Instead of proffering the evidence demanded by its own analysis, BMW

8    resorts to diversion. Specifically, BMW presents only (misleading) evidence that,

9    on March 5, 2013, Ms. Huber believed the problem could not be fixed. According

10   to BMW, because Ms. Huber believed the problems could not be fixed on March

11   5, 2013, Plaintiffs' claims were time-barred as of March 5, 2017. As explained

12   above, however, this is not the standard.

13        Yet even if BMW's proposed "believes the problem cannot be fixed"

14   standard were correct—and for the reasons described above, it plainly is not—

15   BMW's argument would nonetheless fail. This is because there exists a genuine

16   dispute about whether Ms. Huber believed the problems could not be fixed on

17   March 5, 2013. Ms. Huber testified at deposition that it was probably not until

18   after the third repair visit (*i.e.*, the second documented repair visit in March 2013)

19   [17] Indeed, Plaintiffs' conduct, properly considered, comports with BMW's
20   standard. Four documented repair visits were made for the Window Defect, and
     during the fifth repair visit, Mr. Schick made a buyback request. Plaintiffs thus
21   offered a reasonable number of repair attempts in compliance with BMW's own
     warranty guide. (Though in any event, this is a question of fact.)  Accordingly,
22   BMW is equitably estopped from asserting the statute of limitations defense. *See
     also Lantzy v. Centex Homes* (2003) 31 C4th 363, 383 ("O]ne cannot justly or
23   equitably lull his adversary into a false sense of security, and thereby cause his
     adversary to subject his claim to the bar of the statute of limitations, and then be
24   permitted to plead the very delay caused by his course of conduct as a defense to
     the action when brought")

25   [18] Taken to its logical conclusion, BMW's approach would require all
26   consumers who after two documented repair visits believed that the manufacturer
     had not fixed the issue to immediately file suit or give up their claims. However,
27   had Plaintiffs done so, BMW would no doubt have cited its Warranty Manual and
     argued that Plaintiffs had prematurely filed suit, as it was not afforded a
28   reasonable number of repair attempts to fix the issue and/or it had fixed the issue
     because Plaintiff, who is not an automotive expert, never made a third repair visit.

1    that she believed the Subject Vehicle and its Window Defect could not be fixed.

2    (Pls.' Sep. Stmt. at 39.) Nevertheless, because she is not an automotive expert, she

3    continued to rely on the representations of individuals at BMW's authorized

4    dealership, who presumably are automotive experts, who examined Plaintiffs'

5    vehicle, and who told Ms. Huber after each repair visit that the vehicle had been

6    fixed. (Pls.' Sep. Stmt. 40-42.) This is why Plaintiff continued to bring her vehicle

7    in for repairs—because the experts know more than she does, and pursuant to the

8    warranty, claimed they could and had fixed the problem. She also testified at her

9    deposition that it was not until calendar year 2014 that she felt the Vehicle could

10   be a lemon and, therefore, attempted to get out of her lease by trading in the

11   vehicle through the BMW dealer. (Pls.' Sep. Stmt. 43.) This attempt was

12   unsuccessful. (Pls.' Sep. Stmt. 44.) Further, she did not suspect that she had a

13   lemon law claim against BMW for a vehicle buyback until after talking to her then

14   husband about the Subject Vehicle's repair history, which was on or around

15   January 7, 2015, the same date he took the vehicle in for its final and fifth

16   documented repair visit for the windows. (Pls.' Sep. Stmt. 45.) By that time,

17   Plaintiffs had determined that BMW had failed to repair the vehicle within a

18   reasonable number of attempts under its 4-year/50,000-mile express warranty,

19   despite being afforded a reasonable number of opportunities to do so. (Pls.' Sep.

20   Stmt. 46.) Accordingly, based on her discussion with Mr. Schick, she prepared a

21   summary of the vehicle's repair history for him before he called BMW to request

22   a repurchase of the Subject BMW. (Pls.' Sep. Stmt. 47.) Accordingly, the

23   evidence shows that Plaintiffs' claims accrued no earlier than January 7, 2015.

24       In sum, under either the (correct) "reasonable number of attempts" standard

25   or the (incorrect) "believed the problem could not be fixed" standard, Plaintiffs'

26   claims are timely.[19]

27   ───────────────

28       [19] BMW's misguided "believed the problem could not be fixed" approach
     reduces to absurdity. Under this approach, consumers would be required to bring

18

**B.      Plaintiffs' Second Cause of Action for Failure to Conform the Vehicle to Its Express Warranty Within 30 Days Is Timely**

Plaintiff's Second Cause of Action, for Defendant's failure to commence repairs in a reasonable time and to complete them with 30 days, arises pursuant to California Civil Code § 1793.2(b) and 1794(a).

> Where . . . service or repair of the goods is necessary because they do not conform with the applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative in this state. Unless the buyer agrees in writing to the contrary, the goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days.

Cal. Civ. Code § 1793.2(b). "When the vehicle is out of service more than 30 calendar days, the nonconformity does not have to be ongoing." *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 916 (9th Cir. 2005) (decided under similar provision of Nevada law). A consumer may sue for violation of these requirements under Civil Code section 1794, which provides, in relevant part: "(a) Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter . . . may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a).

Here, the Subject Vehicle was not out of service for 30 days until the last repair visit on January 7, 2015 (during which the vehicle was out of service for a total of 13 days). (Pls.' Sept. Stmt. at 56; Huber Decl. ¶ 20.) Because the statute of limitations for the Second Cause of Action could not have run, at the earliest, until after the last repair visit when the vehicle was out of service for 30 days,

---

Song-Beverly lawsuits while their vehicles were still covered under warranty after two repair visits, lest the limitations period elapse.

1  Plaintiffs' claim did not accrue until after January 7, 2015. Accordingly, their

2  claim is timely.[20]

3      **C.    Plaintiffs' Third Cause of Action For Defendant's Failure To**

4          **Make Available to Its Authorized Dealers Sufficient Service**

5          **Literature**

6      In violation of Civil Code section 1793.2, subdivision (a)(3), BMW failed

7  to make available to its authorized service and repair facilities sufficient service

8  literature and replacement parts to effect repairs during the express warranty

9  period. Plaintiff made five repair documented repair visits for the windows with

10 BMW's dealers having failed to repair it. (Pls.' Sept. Stmt. at 8-31.) More

11 importantly, upon Plaintiffs' request for a buyback on or about January 7, 2015,

12 BMW declined Plaintiffs' request on the basis that the problems were self-

13 induced due to the subject vehicle having window tints even though it was never

14 mentioned to Plaintiffs in any of the repair orders that the window problems were

15 due to window tints. (Pls.' Sept. Stmt. at 37-38; Schick Decl. ¶ 10.) While

16 Plaintiff does not contend that the window tints were the cause of the problem

17 (because they were not), it is apparent that BMW has failed to provide its dealers

18 with sufficient information to repair window defects, including requiring its

19 BMW dealers to exclude all other potential causes of the defect (*e.g.*, window

20 tint) so that BMW does not escape from its repurchase obligation by blaming

21 Plaintiffs for an issue that was never noted by it authorized repair facility.

22 _____

23 [20] With respect to at least the second and third causes of action, BMW did nothing
24 more than raise these claims summarily in its Motion and did not sufficiently meet
   and confer on these, so to the extent new arguments are raised on Reply, they
25 should be summarily rejected.  "If a moving party fails to carry its initial burden of
   production, the nonmoving party has no obligation to produce anything, even if
26 the nonmoving party would have the ultimate burden of persuasion at trial."
27 *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102– 03 (9th Cir.
   2000). "In such a case, the nonmoving party may defeat the motion for summary
28 judgment without producing anything." *Id.* at 1103.

1    Accordingly, given that Plaintiffs first learned about BMW having failed to
2    inform its dealers about excluding the tint as a potential cause of the issue after
3    the January 2015 buyback call, this claim is thus timely.

4    **D.    Plaintiffs' Fifth Cause of Action for Breach of the Implied**
5    **Warranty Is Timely**

6    Plaintiffs' implied warranty claim is not time-barred because, like the
7    express warranty, BMW ignores that the limitations period is tolled during the
8    express warranty. In *Ehrlich*, relying on *Krieger v. Nick Alexander Imports, Inc.*,
9    234 Cal. App. 3d 205, 215-217 (1991), and distinguishing *Atkinson v. Elk Cor. of*
10   *Texas*, 142 Cal. App. 4th 212, 232 (2006) (*see* MTD at 25:7-10), the court rejected
11   defendant's contention that plaintiffs' implied warranty claim was barred by the
12   four-year limitations period that began at purchase. *Ehrlich*, 801 F. Supp. 2d at
13   923-925 (quoting *Krieger*, 234 Cal. App. 3d at 215-217) ("BMW's argument fails
14   because it ignores the existence of the 4-year/50,000-mile express warranty, which
15   is a warranty that 'explicitly extends to future performance of the goods.' That
16   warranty tolled the statute of limitations until Plaintiff reasonably knew that his
17   MINI would not perform as it should, which did not occur until his windshield
18   cracked [after the warranty had expired] and BMW would not replace it.").

19   Similarly, here, BMW's 4-year/50,000-mile warranty extends to future
20   performance, which warranty had not expired until February 2015, when Plaintiff
21   returned the vehicle to the dealer. (Pls.' Sept. Stmt. at 2-3.) Accordingly, just like
22   their express warranty claim, this claim is timely. *See also Falco v. Nissan*, No.
23   13- CV-00626, 2013 WL 5575065, at *10 (C.D. Cal. Oct. 10, 2013) (NNA asserts
24   that the above rules mean that an implied warranty brought more than five years
25   from the date of delivery is time barred: Since the implied warranty lasts only one
26   year, NNA argues, a claim must be brought within four years of the expiration of
27   the one-year period, or five years from the date of sale. This argument, fails,

28

1    however because under California law, NNA's 5-year/60,000-mile warranty had

2     the effect of tolling the statute of limitations.")

3         **E.    Defendant is Equitably Estopped From Asserting a Limitations**

4              **Defense**

5         Equitable estoppel is invoked where a plaintiff was aware of his or her claim

6    during the statutory period but is lulled into inaction by a defendant's

7    misrepresentations. In such cases, a defendant will be estopped from pleading a

8    statute of limitations defense. *See Sagehorn v. Engle*, 141 Cal. App. 4th 452, 460, n.

9    6 (2006). To establish that equitable tolling applies, a plaintiff must prove fraudulent

10   conduct by the defendant resulting in concealment of the operative facts that are the

11   basis of the cause of action; plaintiff's failure to discover the operative facts; and due

12   diligence by the plaintiff until discovery of those facts. *Id.* at 46.

13        The following facts support the application of the equitable estoppel doctrine

14   here: (1) Plaintiffs took the vehicle for window repairs on at least five separate

15   occasions (Pls.' Sep. Stmt. at 8-31); (2) during each visit, the dealerships

16   representatives expressly told Ms. Huber that they had successfully repaired the

17   problems (*id.* at 42); (3) after the January 7, 2015 repair visit, Mr. Schick called

18   BMW and explicitly requested it repurchase the vehicle, as required under the Lemon

19   Law, but BMW refused to repurchase the vehicle or otherwise concede that the

20   vehicle suffered from a defect (*id.* at 36); and (5) BMW expressly blamed Plaintiffs

21   for the window problems (*id.* at 37). In other words, despite knowing that the vehicle

22   suffered from a defect, BMW repeatedly falsely represented to Plaintiffs that the

23   problems had been fixed. Moreover, not only did BMW refuse to repurchase the

24   vehicle or otherwise acknowledge the vehicle's defect, BMW also baselessly claimed

25   that Plaintiffs had caused the windows problem.

26        This is a paradigmatic case for application of the equitable estoppel doctrine:

27   BMW's deceptive conduct—misleading Plaintiffs during the repair visits and shifting

28

the blame to Plaintiffs—caused Plaintiffs' claims to grow stale. Accordingly, Plaintiffs' claims have been tolled under the equitable estoppel doctrine.

### F.   Plaintiff's Claims are Tolled Pursuant to Section 1793.1(a)(2)

"If a defect exists within the warranty period, the warranty will not expire until the defect has been fixed." Cal. Civ. Code § 1793.1(a)(2).[21] Here, Plaintiffs' vehicle suffered from the Window Defect, which BMW failed to repair after a reasonable number of attempts under the express warranty. (*See* Pl.'s Sep. Stmt. at 33, 46.)[22] Because BMW was unable to repair the defect during the warranty period, the warranty is extended until such time that the vehicle has been repaired—an event that never occurred up to the date Plaintiff returned the vehicle at lease end, so Plaintiffs can bring a claim under Song-Beverly.

### G.   The Repair Doctrine Has Tolled Plaintiff's Claims

"The statute of limitations is tolled where one who has breached a warranty claims that the defect can be repaired and attempts to make repairs." *See Cardenas v. Ford Motor Co.*, No. CV181090DSFPLAX, 2018 WL 2041616, at *1 (C.D. Cal. Apr. 23, 2018) ("Plaintiffs' complaint alleges that Defendants unsuccessfully attempted repair of the allegedly defective vehicle. The statute of limitations on a warranty claim is tolled during the period in which a defendant has unsuccessfully attempted to repair the defect.") (citing *Aced v. Hobbs–Sesack Plumbing Co.*, 55 Cal.2d 573, 585 (1961)). BMW has not been able to repair the vehicle, even after numerous repair attempts up to the date that

---

[21] Song-Beverly should be interpreted broadly to protect the interest of the consumer. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015) ("[T]he policy repeatedly expressed by California courts of the need to construe the Song–Beverly Act so as to implement the legislative intent to *expand* consumer protection and remedies.") (quoting *Mexia*, 95 Cal.Rptr.3d at 296).

[22] For purposes of calculating the number or repair attempts, no distinction is made between the manufacturer and its authorized repair facility—they are treated as a single entity and their repair efforts are aggregated *See Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 889 (1989) (finding instructional error where trial court suggested manufacturer was entitled to at least one opportunity to fix problem, notwithstanding dealership's many previous efforts to do so).

23

1  Plaintiffs returned the vehicle at lease end. (*See* Pl.'s Sep. Stmt. at 6-7.)

2  Accordingly, Plaintiffs' claims have also been tolled under the repair doctrine.

3       **H.**    **Plaintiffs' Claims Have Continuously Accrued**

4       Plaintiffs' claims are also timely as a result of the continuous accrual

5  doctrine. Where the wrong complained of is continual or recurring, the cause of

6  action is subject to continuous accrual for statute of limitations purposes: *i.e.*, a

7  cause of action accrues each time a wrongful act occurs, triggering a new

8  limitations period. *See Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25

9  Cal. 4th 809, 821 (2001); *Orange County Water Dist. v. Sabic Innovative*

10  *Plastics US, LLC*, 14 Cal. App. 5th 343, 395-396 (2017); *Komarova v. Nat'l*

11  *Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 343 (2009). "[E]ach new breach

12  of an obligation provides all the elements of a claim—wrongdoing, harm, and

13  causation." *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1199

14  (2013). *See also Gilkyson v. Disney Enterprises, Inc.*, 244 Cal. App. 4th 1336,

15  1341-1342 (2016).

16       As explained above, BMW's servicing dealership could not repair the

17  Window Defect, even after the fifth repair attempt. (Pls.' Sep. Stmt. at 6-7.)

18  Accordingly, on January 7, 2015, Plaintiffs called BMW and asked that BMW

19  repurchase the Subject BMW during the fifth repair attempt. BMW failed to

20  comply with its statutory obligation to buy the vehicle back and as a result,

21  BMW violated its duty under Song-Beverly to promptly repurchase a vehicle

22  after a reasonable number of repair attempts. Accordingly, Plaintiffs' claims

23  accrued anew during each repair visit during the warranty period, with the final

24  repair visit and request for vehicle repurchase occurring on January 7, 2015.

25  Accordingly, Plaintiff's claims will not expire until January 7, 2019.

26       **I.**    **The Statute of Limitations Defense is a Question of Fact for the**

27                **Trier of Fact to Decide, and is Not Suitable for Disposition on a**

28                **Motion for Summary Judgment**

24

BMW's statute of limitations defense is not suitable for resolution on a motion for summary judgment. As the California Supreme Court observed, "[t]here are no hard and fast rules for determining what facts or circumstances will compel inquiry by the injured party and render him chargeable with knowledge. [Citation.] It is a question for the trier of fact." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal. 3d 586, 597 (1970).[23]

## VI.   CONCLUSION

Finally, insofar as the Court is inclined to grant the MSJ with respect to Ms. Hubler, finding that her claims accrued in March 2013, Plaintiffs submit that it would be improper to also find that Mr. Schick's claims also accrued on that date. Ms. Hubler and Mr. Schick are co-plaintiffs and were co-owners of the Subject BMW and were divorced when the Complaint in this matter was filed. As a general matter, the knowledge of one cannot be fairly imputed to the other.  (This is particularly so because Ms. Hubler and Mr. Schick divorced prior to the filing of this action.)  Indeed, BMW has not put forth any evidence that Mr. Schick's claims accrued earlier than January 2015.

For the foregoing reasons, the Court should deny Defendant's Motion for Summary Judgment.

Dated:  October 20, 2016                    Respectfully submitted,
                                            Strategic Legal Practices, APC

                                            By:  /s/ Eleazar Kim
                                                 Eleazar Kim
                                                 Attorneys for Plaintiffs

---

[23] *See also Cleveland v. Internet Specialties West, Inc.*, 171 Cal. App. 4th 24, 30-31 (2009) (trial court erred in granting summary judgment where facts were disputed as to when plaintiff should have learned facts essential to claims).

25